IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Jay Lynn Pember, )   No. CV-11-1600-PHX-SMM (LOA)
                              )
          Petitioner, )   **REPORT AND RECOMMENDATION**
                              )
vs.                        )
                              )
Charles Ryan, et al., )
                              )
          Respondents. )
                              )
_____ )

This matter is before the Court on Petitioner's Amended Petition for Writ of Habeas Corpus. (Doc. 4)  Respondents have filed an Answer, doc. 14, to which Petitioner has replied, doc. 21.  The Court finds that an evidentiary hearing is not warranted in this case. *See Cullen v. Pinholster*, ___ U.S. ___ , 131 S.Ct. 1388 (2011) (holding that, when a petitioner seeks habeas relief under 28 U.S.C. § 2254(d)(1), federal courts are restricted to the state court record when deciding claims previously adjudicated on the merits by the state courts.).  After consideration, it is recommended that the Petition be denied.

**I. Factual and Procedural Background**

**A.  Charges, Trial and Sentencing**

On August 26, 2005, the State of Arizona filed an indictment, charging Petitioner and several co-defendants with various felonies arising out of a riot at the Arizona State

Prison, Lewis Complex. (Respondents' Exh. A[1])  The State further alleged that Petitioner had seven prior historical felony convictions.  (Respondents' Exh. C)  Petitioner's case proceeded to trial[2] and, on May 4, 2006, the jury convicted him of the following offenses: (1) aggravated assault as to Correctional Officer Schwartz (Count 2); (2) prisoner who commits assault with intent to riot/prisoner who participates in a riot (Count 3); (3) aggravated assault as to Correctional Captain Yielding (Count 4); and (4) burglary in the third degree (Count 5). (Respondents' Exhs. S, W)

The trial court subsequently conducted a separate jury trial on the State's allegations that Petitioner committed Counts 2-5 in the presence of an accomplice.  (Respondents' Exh. S, doc. 15-1 at 135-148)  The jury found that the State had proved the charges beyond a reasonable doubt as to Counts 2, 3, and 5, but not as to Count 4.  (Respondents' Exh. S at 22, doc. 15-1 at 150; Exh. W)  On June 6, 2006, the court conducted a combined trial on allegations of prior convictions and sentencing hearing. (Respondents' Exh. T at 2, doc. 15-1 at 168)  Petitioner admitted two of the prior historical felonies. (Respondents' Exh. T at 3-5, doc. 15-1 at 169-171)  That same day, the court sentenced Petitioner to concurrent terms of five years in prison on Counts 2 and 4 (aggravated assault), ten years on Count 5 (third-degree burglary), and twelve years "flat" on Count 3 (riot). The court further ordered that the riot sentence run consecutively to Petitioner's existing prison sentence, and that his remaining sentences run concurrently with the riot sentence. (Respondents' Exh. U at 14-15; doc. 15-1 at 191-192) On February 5, 2007, the trial court entered a minute entry "amending" the sentencing minute entry to provide that, "following expiration of the sentence imposed in connection with Count I, defendant is sentenced to a term of community supervision pursuant to A.R.S. § 13-603."  (Respondents' Exh. AA, doc. 15-2 at 19)

---

[1] Citations to "Respondents' Exh." are to exhibits A-O that appear at docket no. 14, exhibits P-NN at docket no. 15, and exhibits OO-OOO at docket no. 16.

[2] The Honorable David R. Cole presided.

**B. Direct Appeal**

Petitioner filed a timely appeal asserting the following claims: (1) the trial court erred by excusing a Michigan resident from the jury pool in Petitioner's absence before *voir dire*; (2) Petitioner's constitutional rights were violated by the trial court's security precautions, which required that Petitioner and his co-defendants remain in leg and ankle chains (that were not visible to the jury), and that one time, a juror heard a deputy snap handcuffs on Petitioner; (3) the court of appeals should: (i) amend the trial court's sentencing minute entry to clarify the date of commencement of Petitioner's 12-year consecutive sentence for the prison riot and state that Petitioner's offenses were "repetitive;" and (ii) remand the matter to allow the trial judge to clarify whether Petitioner's sentences for assault and third-degree burglary run concurrently with Petitioner's sentence for prison riot. (Respondents' Exhs. DD, EE, FF)  On November 26, 2008, the appellate court found that trial court did not violate Petitioner's constitutional rights by excusing the Michigan jury-pool member, and any error was harmless; Petitioner failed to demonstrate that he was prejudiced by the security measures, and the fact that the jury inadvertently learned that one of the defendants was in handcuffs was harmless error; and that the sentencing discrepancies could, and would, be resolved by the appellate court on the record.  (Respondents' Exh. II, doc. 15-2 at 167-182)

**C. Post-Conviction Review**

**1. First Petition for Post-Conviction Relief**

On December 12, 2008, Petitioner filed a notice of post-conviction relief in the trial court pursuant to Ariz.R.Crim.P. 32. (Respondents' Exh. JJ, doc. 15-2 at 184) The court appointed counsel who informed the court that she could find no claims to raise on Petitioner's behalf. (Respondents' Exhs, KK, LL, doc. 15-2 at 188-193)  After receiving several extensions of time, Petitioner filed a *pro se* Petition for Post-Conviction Relief. (Respondents' Exhs. NN, doc. 15-2 at 197-209; Exh. PP, doc. 16 at 4)  Petitioner alleged: (1) a due process violation based on the failure to grant a Rule 11 hearing; (2) ineffective assistance of trial counsel related to the Rule 11 request; (3) denial of severance from co-

defendants; (4) ineffective assistance of trial counsel for failing to move to sever Petitioner's trial; (5) prosecutorial misconduct and trial court error for showing photographs of tattoos; (6) ineffective assistance of trial counsel related to photographs of tattoos; (7) the trial court erred for failing to grant a mistrial when some jurors heard Petitioner being handcuffed; and (8) denial of "right to be present twice on resentencing" as a result of the superior court's minute entry adding community service and the court of appeals' rulings concerning Petitioner's sentences.  (Respondents' Exh. PP, doc. 16 at 5)

On January 19, 2010, the trial court denied Petitioner's petition for post-conviction relief. (Respondents' Exh. VV, doc. 16-1 at 2)  The court found claims 1, 3, 5 and 8 precluded and rejected the remaining claims on the merits.  The court further noted that Petitioner's reply brief attempted to allege "neglect and error" by appellate counsel, but found that issue "waived" by Petitioner's failure to include it in his original petition. (*Id.*)

On March 26, 2010, Petitioner filed a petition for review in the Arizona Court of Appeals which was summarily denied on August 4, 2011.  (Respondents' Exh. WW, doc. 16-1 at 6; Exh. AAA, doc. 16-1 at 84)

**2. Second Petition for Post-Conviction Relief**

On March 10, 2010, Petitioner filed a second notice of post-conviction relief. (Respondents' Exh. BBB, doc. 16-1 at 88)  On March 24, 2010, the trial court dismissed the petition. (Respondents' Exh. CCC, doc. 16-1 at 92)  Petitioner sought review in the Arizona Court of Appeals, which was denied on December 6, 2011. (Respondents' Exhs. DDD, doc. 16-1 at 95; Exh. GGG, doc. 16-1 at 157)

**D. Federal Petition for Writ of Habeas Corpus**

On August 15, 2011, Petitioner filed a timely[3] Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, doc. 1, and an Amended Petition on October 23, 2011, doc. 4. Petitioner raises the following claims for relief:

---

[3] Respondents advise the Court that the Amended Petition appears timely under 28 U.S.C. § 2244(d) and do not raise a statute of limitations defense. (Doc. 14 at 13)  The Court agrees that the Petition is timely and declines to address this issue further.

Ground One: Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to an impartial jury, to be present at critical stages of the case, and to be free from cruel and unusual punishment were violated when the court conducted portions of jury selection in the absence of Petitioner and his attorney.

Ground Two: Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated by the trial court's security precautions, which required that Petitioner and his co-defendants remain in leg and ankle chains, and the fact that, on one occasion, a juror heard a deputy snap handcuffs on Petitioner.

Ground Three: Petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated based on appellate counsel's representation and the Court of Appeals' rulings regarding his sentence.

Ground Four: Petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated because the trial court amended its sentencing minute entry to require Petitioner to perform community service following his release, without notice to Petitioner or Petitioner's presence in the courtroom. (Doc. 4) The Petition is fully briefed. For the reasons set forth below, the Petition should be denied.

## II. Exhaustion and Procedural Bar

Respondents argue that portions of Grounds One and Two, and all of Grounds Three and Four are procedurally barred from federal habeas corpus review because they were not fairly presented as federal claims to the state court, and because the State court denied those claims on an adequate and independent state-law ground. (Doc. 14 at 14)  The Court will consider the procedural bar issue below.

### A. Applicable Law

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state remedies available to him. 28 U.S.C. § 2254(b). When seeking habeas relief, the petitioner bears the burden of showing that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981) (*per curiam*). The exhaustion inquiry focuses on the availability of state remedies at the time the

petition for writ of habeas corpus is filed in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). The prisoner "shall not be deemed to have exhausted . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In other words, proper exhaustion requires the prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. "One complete round" includes filing a "petition[] for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id.*

To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct appeal or in a petition for post-conviction relief. *Crowell v. Knowles*, 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

In addition to presenting his claims to the proper court, a state prisoner must fairly present his claims to that court to satisfy the exhaustion requirement. A claim is "fairly presented" in state court only if a petitioner has described both the operative facts and the federal legal theory on which his claim is based. *Reese*, 541 U.S. at 28. It is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. *Id.* (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim). Rather, the habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such as due process, equal

protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the pleadings filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27.

In sum, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

A habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds such as waiver or preclusion. *See Beard v. Kindler*, ___ U.S.___, 130 S.Ct. 612, 614-19 (2009); *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 729-30. Thus, a petitioner may be barred from raising federal claims that he did not preserve in state court by making a contemporaneous objection at trial, on direct appeal, or when seeking post-conviction relief. *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (stating that failure to raise contemporaneous objection to alleged violation of federal rights during state trial constitutes a procedural default of that issue); *Thomas v. Lewis*, 945 F.2d 1119, 1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of Appeals held

that habeas petitioner had waived claims by failing to raise them on direct appeal or in first petition for post-conviction relief.).  If the state court also addressed the merits of the underlying federal claim, the "alternative" ruling does not vitiate the independent state procedural bar. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance of counsel claims "barred under state law," but also discussed and rejected the claims on the merits, *en banc* court held that the "on-the-merits" discussion was an "alternative ruling" and the claims were procedurally defaulted and barred from federal review). A higher court's subsequent summary denial of review affirms the lower court's application of a procedural bar.  *Nunnemaker*, 501 U.S. at 803. However, "in order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of Petitioner's default."  *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). The Supreme Court had held that "a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review," and that "a discretionary rule can be 'firmly established' and 'regularly followed' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not in others." *Kindler*, 130 S.Ct. at 618. Likewise, occasionally excusing non-compliance with a procedural rule does not render a state procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n. 6 (1989).

Arizona courts have been consistent in their application of procedural default rules.  *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Arizona Rule of Criminal Procedure 32.2(a) is an adequate and independent procedural bar); *Cook v. Schriro*, 538 F.3d 1000, 1026 (9th Cir. 2008) (stating that "[p]reclusion of issues for failure to present them at an earlier proceeding under Arizona Rule of Criminal Procedure 32.2(a)(3) 'are independent of federal law because they do not depend upon a federal constitutional ruling on the merits.'") (footnote omitted) (quoting *Smith*, 536 U.S. at 860); *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly" followed Rule 32).

The second procedural default scenario arises when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state courts' procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (Ariz. 1996); Ariz. R. Crim. P. 32.2(a) & (b); Ariz. R. Crim. P. 32.1(a)(3) (post-conviction review is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time-barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Az.R.Crim.P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)). This type of procedural default is known as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him.").

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Hughes,* 800 F.2d at 907-08. To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id.*  The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.*  Ordinarily, the ineffective assistance of counsel in collateral proceedings does not constitute cause because "the right to counsel does not extend to state collateral proceedings or federal habeas proceedings." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

1    Prejudice is actual harm resulting from the constitutional violation or error.

2    *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas

3    petitioner bears the burden of demonstrating that the alleged constitutional violation

4    "worked to his actual and substantial disadvantage, infecting his entire trial with error of

5    constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v.*

6    *Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where petitioner fails to establish cause, the

7    court need not reach the prejudice prong.

8    A federal court may also review the merits of a procedurally defaulted claim if the

9    petitioner demonstrates that failure to consider the merits of his claim will result in a

10   "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A

11   "fundamental miscarriage of justice" occurs when a constitutional violation has probably

12   resulted in the conviction of one who is actually innocent. *Id.* To satisfy the fundamental-

13   miscarriage-of-justice standard, a petitioner must establish that it is more likely than not that

14   no reasonable juror would have found him guilty beyond a reasonable doubt in light of new

15   evidence. *Id.* at 327; 28 U.S.C. § 2254(c)(2)(B). Even if a petitioner asserts a claim of actual

16   innocence to excuse his procedural default of a federal claim, federal habeas relief may not

17   be granted absent a finding of an independent constitutional violation occurring in the state

18   criminal proceedings. *Dretke*, 541 U.S. at 393-94.

19   **B.  Ground One**

20   In Ground One, Petitioner asserts various constitutional theories based on the trial

21   court's pre-*voir dire* exclusion of a prospective juror based on her representation that she

22   was from Michigan, paid taxes in Michigan, had a Michigan driver's license, and did not

23   consider herself an Arizona resident. The Court agrees with Respondents that, only the same

24   factual and legal theories that Petitioner presented to the states courts are properly before

25   this Court. To the extent that Petitioner attempts to expand his claim regarding the exclusion

26   of the Michigan juror to include an Eighth Amendment claim, such claim is procedurally

27   barred because it was not presented to the State courts on direct appeal or post-conviction

28   review.

1  **C.  Ground Two**

2       In Ground Two, Petitioner asserts various constitutional theories based on the fact

3  that he was restrained with a leg and ankle chain during trial, and that a juror heard a guard

4  put handcuffs on a defendant when they were leaving the courtroom. The Court agrees with

5  Respondents that only the facts and legal theories that Petitioner presented to the State courts

6  are properly before this Court on habeas corpus review.  To the extent Ground Two expands

7  on the claims raised in the State courts - to assert an Eighth Amendment claim - such a claim

8  is procedurally barred.

9  **D. Ground Three**

10       In Ground Three, Petitioner argues that (i) he received ineffective assistance of

11  appellate counsel based on counsel's request that the court of appeals clarify Petitioner's

12  sentence, and counsel's failure to raise the "many issues" that Petitioner claims he requested

13  counsel to raise on direct appeal; and (ii) the court of appeals' ruling on Petitioner's

14  sentences violated Petitioner's rights to due process and counsel, and to be free from double

15  jeopardy and cruel and unusual punishment. Respondents argue that these claims are

16  procedurally barred from federal habeas corpus review.

17       First, Respondents assert that Petitioner's claims of ineffective assistance of

18  appellate counsel are procedurally defaulted and barred from review because Petitioner did

19  not raise a federal claim of ineffective assistance of counsel to the State courts.

20  Alternatively, Respondents argue that federal review of Petitioner's claims of ineffective

21  assistance of appellate counsel are barred by the State courts' denial of such claims based on

22  an adequate and independent state law ground. The Court agrees.  Although Petitioner's first

23  petition for post-conviction relief mentions his dissatisfaction with appellate counsel's

24  request that the court "correct" his sentence, Petitioner did not allege that counsel was

25  ineffective, let alone that he was ineffective under the Sixth Amendment. (Respondents'

26  Exh. PP at 8-9, doc. 16 at 15-16)  Although Petitioner's reply referred to "neglect and error

27  by incompetent appellate counsel," Respondents' Exh. UU, doc. 16 at 176- 216, the Superior

28  Court found that any claim of ineffective assistance of appellate counsel was waived

1   because Petitioner raised that issue for the first time in his reply.  (Respondents' Exh. VV,

2   doc. 16-1 at 1-5) Consequently, the State court rejected that claim on adequate and

3   independent state law grounds. Further, although Petitioner's second petition for post-

4   conviction relief also complained that "direct appeal counsel would not raise issues on

5   appeal," and "issues were precluded because counsel was ineffective, and did not raise them,

6   after ask[ed] many times," Petitioner did not cite the Sixth Amendment or federal law.

7   (Respondents' Exh. BBB, doc. 16-1 at 89)  Accordingly, Petitioner did not fairly present a

8   federal claim of ineffective assistance of appellate counsel to the State courts.

9           In summary, Petitioner did not exhaust a Sixth Amendment claim of ineffective

10   assistance of appellate counsel in the State courts and such claim is procedurally barred from

11   federal habeas corpus review.

12           In Ground Three, Petitioner further argues that his constitutional rights were

13   violated because the court of appeals' ruling concerning Petitioner's sentence (the

14   "clarification" claim) were unwarranted and erroneous and constituted a new sentence (the

15   "new sentencing" claim) at which Petitioner was not present. Petitioner did not properly

16   exhaust these claims.  Petitioner did not present the clarification claim to the State courts,

17   thus it is procedurally defaulted and barred from federal review. Although Petitioner raised

18   his new sentence claim in his first petition for post-conviction relief, the post-conviction

19   court rejected that claim as precluded pursuant to an adequate and independent State law

20   ground, and therefore is it procedurally barred. (Respondents' Exhs. PP, VV)

21   **E.  Ground Four**

22           In Ground Four, Petitioner argues that the trial court's post-sentencing minute

23   entry imposing a "community supervision" component to Petitioner's sentence on Count I

24   violated various constitutional rights. Although Petitioner arguably presented this as a

25   federal claim in his first petition for post-conviction relief, the claim is procedurally de-

26   faulted and barred from review because the post-conviction court rejected the claim based

27   on an adequate and independent state law ground, specifically, that Petitioner failed to raise

28   the claim on appeal.  (Respondents' Exh. VV)

**F.  Overcoming the Procedural Bar**

As set forth above, portions of Petitioner's claims asserted in Grounds One and Two, and all of Grounds Three and Four are procedurally defaulted and barred from review unless Petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 749-50; *Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

**1.  Cause and Prejudice**

To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Murray*, 477 U.S. at 488-492. The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* Prejudice is actual harm resulting from the constitutional violation or error. *Magby*, 741 F.2d at 244. Where a petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Petitioner does not assert any basis which is sufficient to overcome the procedural bar. Because Petitioner offers no legitimate "cause" which precluded him from properly exhausting his State remedies, the Court need not reach the issue of prejudice. *Engle*, 456 U.S. at 134 n. 43.

**2.  Fundamental Miscarriage of Justice**

Additionally, Petitioner has not shown that failure to consider his defaulted claims will result in a fundamental miscarriage of justice. A federal court may review the merits of a procedurally defaulted habeas claim if the petitioner demonstrates that failure to consider the merits of his claim will result in a "fundamental miscarriage of justice." *Schlup*, 513 U.S. at 327. A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.*

This gateway "actual innocence" claim differs from a substantive actual innocence claim. *Smith v. Baldwin*, 466 F.3d 805, 811-12 (9th Cir. 2006). The Supreme Court

described the gateway showing in *Schlup*, 513 U.S. at 315-16, as a less stringent standard than a substantive claim of actual innocence. *See also Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (suggesting that a "habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt and must affirmatively prove that he is innocent."). If Petitioner passes through the *Schlup* gateway, a court is only permitted to review his underlying constitutional claims. *Smith*, 466 F.3d at 807.  The fundamental-miscarriage-of-justice exception applies only to a "narrow class of cases" in which a petitioner makes the extraordinary showing that an innocent person was probably convicted due to a constitutional violation. *Schlup*, 513 U.S. at 231. To demonstrate a fundamental miscarriage of justice, Petitioner must show that "a constitutional violation has resulted in the conviction of one who is actually innocent." *Id*. at 327.  To establish the requisite probability, Petitioner must prove with new reliable evidence that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* New evidence presented in support of a fundamental miscarriage of justice may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.* at 324; *see also, House v. Bell*, 547 U.S. 518 (2006) (stating that a fundamental miscarriage of justice contention must involve evidence that the trial jury did not have before it).

Petitioner has not established that, in light of newly discovered evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 327.

## III.  Standard of Review

Respondents concede that Petitioner's remaining claims are properly before the Court on habeas corpus review.  Respondents, however, argue that Petitioner is not entitled to habeas corpus relief because he has not established that the Arizona courts' resolution of his claims was based on an unreasonable determination of the facts; or that the Arizona courts' determination was either contrary to, or based upon an unreasonable application of, clearly established federal law.  28 U.S.C. 2254(d).

1        This Court's consideration of the merits of Petitioner's claims is constrained by the

2   applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the

3   Antiterrorism and Effective Death Penalty Act ("AEDPA").  The ADEPA "modified a

4   federal habeas court's role in reviewing state prisoner applications in order to prevent

5   federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

6   extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  The standard in

7   § 2254(d) is "meant to be" "difficult to meet." *Harrington v. Richter*, ___ U.S., ___ , 131

8   S.Ct. 770, 786 (2011).  Section "2254 stops short of imposing a complete bar on federal

9   court relitigation of claims already rejected in state court proceedings." *Id*. (citations

10  omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme

11  malfunction in the state criminal justice systems,' not a substitute for ordinary error

12  correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

13       Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is

14  shown that the earlier state court's decision "was contrary to" federal law then clearly

15  established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v.*

16  *Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such

17  law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in

18  light of the record before the state court, § 2254(d)(2). *Richter*, 131 S.Ct. at 785; *see also*

19  *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir.  2006). To determine whether a state court

20  ruling was "contrary to" or involved an "unreasonable application" of federal law, federal

21  courts look exclusively to the holdings of the Supreme Court which existed at the time of the

22  state court's decision.  *Richter*, 131 S.Ct. at 786 (citing *Renico v. Lett*, 559 U.S. ___ , ___,

23  130 S.Ct. 1855, 1866 (2010)). The Ninth Circuit has acknowledged that it cannot reverse a

24  state court decision merely because that decision conflicts with Ninth Circuit precedent on a

25  federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v.*

26  *Murphy*, 331 F.3d 1062, 1069 (9th Cir.  2003). Even if the state court neither explains its

27  ruling nor cites United States Supreme Court authority, the reviewing federal court must

28  nevertheless examine Supreme Court precedent to determine whether the state court

reasonably applied federal law. *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*, 537 U.S. 3, 8 (2003)). The Supreme Court held in *Early*, and recently reaffirmed in *Richter*, that citation to federal law is not required and that compliance with the habeas statute "does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *Richter*, 131 S.Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim', not a component of one, has been adjudicated." *Richter*, 131 S.Ct. at 784.

Under § 2254(d), a state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams*, 529 U.S. at 411. A state court's decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S.Ct. 786 (citing *Yarborough*, 541 U.S. at 664). "'[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination.'" *Id.* (citing *Yarborough*, 541 U.S. at 664).

The habeas court presumes that the state court's factual determinations are correct

1    and petitioner bears the burden of rebutting this presumption by clear and convincing

2    evidence. 28 U.S.C. § 2254(e)(1) (stating that "a determination of factual issues made by a

3    State court shall be presumed to be correct. The applicant shall have the burden of rebutting

4    the presumption of correctness by clear and convincing evidence."); *Williams v. Rhoades*,

5    354 F.3d 1101, 1106 (9th Cir. 2004).

6         Where a state court decision is deemed  "contrary to" or an "unreasonable

7    application of" clearly established federal law, the reviewing court must next determine

8    whether it resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th

9    Cir. 2002). On habeas review, the court assesses the prejudicial impact of most

10   constitutional errors by determining whether they "had substantial and injurious effect or

11   influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623

12   (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Fry v.*

13   *Pliler*, 551 U.S. 112 (2007) (the *Brecht* standard applies whether or not the state court

14   recognized the error and reviewed it for harmlessness). The *Brecht* harmless error analysis

15   also applies to habeas review of a sentencing error. The test is whether such error had a

16   "substantial and injurious effect" on the sentence. *Calderon v. Coleman*, 525 U.S. 141,

17   145-57 (1998) (holding that for habeas relief to be granted based on constitutional error in

18   capital penalty phase, error must have had substantial and injurious effect on the jury's

19   verdict in the penalty phase.); *Hernandez v. LaMarque*, 2006 WL 2411441 (N.D.Cal. Aug.

20   18, 2006) (finding that even if the evidence of three of petitioner's prior convictions was

21   insufficient, petitioner was not prejudiced by the court's consideration of those convictions

22   because the trial court found four other prior convictions which would have supported

23   petitioner's sentence.)  The Court will review Petitioner's claims under the applicable

24   standard of review.

25   **IV.  Analysis**

26     **A.  Ground One**

27         In Ground One, Petitioner asserts that his constitutional rights were violated when

28   the trial court excused a prospective juror outside of Petitioner's presence. As set forth

1  below, this claim lacks merit.

2  On April 10, 2006, before any prospective jurors were sworn in, the trial court

3  conducted a pre-trial conference, which defendants and their attorneys attended.  (Respon-

4  dents' Exh. G, doc. 14-1 at 85)  During the conference, the judge informed the parties that

5  he was going to speak with the prospective jurors, and direct them to report back the

6  following day. (Respondents' Exh. G at 18, doc. 14-1 at 102)  After counsel and the

7  defendants left, the prospective jurors were brought into the courtroom. On the record, the

8  trial court informed the 65 prospective jurors that they should return the following day to

9  start jury selection. (*Id*. at 19-21; *Id*. at 103-05)  The court then answered administrative

10  questions concerning child care, the trial schedule, payment and the like. (*Id*.) During that

11  time, prospective Juror Number 8 advised the court that she was not a full-time resident of

12  Arizona, but only spent three months of the year in Arizona. (Respondents' Exh. G at 24-25;

13  doc. 14-1 at 108-109)  In response to the court's questions, Juror Number 8 stated that she

14  paid taxes only in Michigan, had a Michigan driver's license, and considered herself a

15  Michigan resident. (*Id*.) The court excused Juror Number 8 and stated that it would "give her

16  number to somebody else tomorrow, along with the other additional prospective jurors we'll

17  have tomorrow." (*Id*.)  The next day, 78 prospective jurors reported, were sworn in, and the

18  jury selection began. (Respondents' Exh. H at 24, doc. 14-1at 135)

19  On direct appeal, Petitioner argued that the trial court violated his due process

20  rights by conducting a stage of jury selection in his absence. (Respondents' Exh. DD at 20,

21  doc. 15-2 at 39) The appellate court rejected Petitioner's claim. Although the court

22  recognized that a criminal defendant has a "constitutional right to be present at all stages of

23  the criminal proceedings, including jury selection," it held that exclusion from a "minor

24  portion" of the selection process was "harmless error."  (Respondents' Exh. II, doc. 15-2 at

25  169) The appellate court explained that the trial court excused the juror for a "neutral"

26  reason based on her qualification to serve, and the juror was excused "before the jury panel

27  was actually sworn in or seated and before *voir dire* began to uncover any prejudices that

28  jurors might have brought to this specific case." (*Id*. at 5, *Id*. at 171)  The appellate court

1   further emphasized that, although Petitioner had a right to a "fair trial and an impartial jury,"

2   he did not have a right to be tried by "any particular jury," and that he had not claimed that

3   "the jury he received was not fair and impartial."  (*Id*. at 6, *Id*. at 172)

4          Petitioner has not shown that the State courts' rejection of Petitioner's due process

5   claim was contrary to, or an unreasonable application of, Supreme Court precedent. 28

6   U.S.C. § 2254(d). "The Constitution . . . does not dictate a catechism for *voir dire*, but only

7   that the defendant be afforded an impartial jury."  *Morgan v. Illinois*, 504 U.S. 719, 729

8   (1992).  To determine whether the manner in which *voir dire* was conducted afforded a

9   criminal defendant his due process rights, the reviewing court inquires whether the alleged

10  restriction on *voir dire* interfered with the trial court's ability to remove prospective jurors

11  who would not be able to impartially follow the court's instructions and evaluate the

12  evidence. *Id*. at 729-30. Here, as the appellate court found, the trial court's actions did not

13  interfere with that process.

14         In *Morgan*, which Petitioner cites in support of his claim, the trial court restricted a

15  capital defendant from inquiring into the prospective juror's views on capital punishment,

16  including whether the prospective juror would automatically vote for the death penalty. 504

17  U.S. at 729. Unlike *Morgan*, the trial court did not impose such a restriction in this case.

18  Rather, the trial court simply excused an individual who was not qualified to serve under

19  State law.

20         Petitioner argues that the trial court's exclusion of the Michigan juror may have

21  prejudiced him because, if Petitioner "and his counsel had been present, they might have

22  been able to influence the jury selection process," making it "impossible at this time to

23  qualify the resulting harm." (Respondents' Exh. DD at 21-22)  Petitioner's argument is

24  speculative and, even if the trial court erred in excusing the Michigan juror, such error

25  would not satisfy the *Brecht* standard which requires federal habeas corpus petitioners to

26  demonstrate that the alleged error had a "substantial and injurious effect or influence in

27  determining the jury's verdict." *Id.* at 623; *see also Fry v. Pliler*, 551 U.S. 112, 121-22

28  (2007) (holding "that in § 2254 proceedings a court must assess the prejudicial impact of

constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness. . . .").

**B. Ground Two**

In Ground Two, Petitioner argues that his constitutional rights were violated by the trial court's security measures, which required Petitioner and his three co-defendants to remain in leg and ankle chains ("leg restraints"), and because on one occasion, a juror heard a deputy snap handcuffs on Petitioner. As discussed below, this claim lacks merit.

**1. Relevant Facts**

**a. Facts related to leg restraints**

On April 11, 2006, the day scheduled for *voir dire*, counsel for co-defendant Jiminez, Mr. Beresky, informed the court that he had just learned that his client and his co-defendants, including Petitioner, would be kept in leg restraints during trial. (Respondents' Exh. H at 12-13; doc. 14-1 at 123-24) Mr. Beresky raised an objection, in which Petitioner's counsel joined. (*Id*. at 15, *Id.* at 126) Counsel stated that "visible leg chains under the tables and especially under the two tables . . . that don't [have] any sort of covering around them would prejudice . . . my client." (Respondents' Exh. H at 13, doc. 14-1 at 124) The court responded that the problem could be resolved by rearranging the tables so the defendants sat at tables with solid fronts. (*Id.*) Counsel further objected to the leg restraints, arguing that, when the defendants moved, the jurors would likely "hear the chains rattling under the table." (*Id*. at 13-14, *Id.* at 124-25) The court stated that he would do his best to make sure the jurors did not hear or see anything they shouldn't. Sergeant Lewis advised the trial court that the size of the tables and the fact that the defendants' chains were underneath their socks should limit the sound of the restraints. (Respondents' Exh. H at 14-18, doc. 14-1 at 125-129) The court stated that, to further consider the issue, they should listen to the defendants as they walked into the courtroom, outside of the jurors' presence, and also advise the defendants of the concerns raised regarding the leg restraints. (*Id*.)

After Petitioner and his co-defendants were brought into the courtroom, outside of

the jurors' presence, the court instructed the defendants:

> I want to tell these three gentlemen that we have gone to great lengths to make sure that nobody sees or hears anything that they should not hear or see. I think you gentlemen know what I am talking about. We will not be seating anybody in [the] row directly behind you. And . . . I'm hoping counsel talked to you about any unnecessary noise that [you] might make that might . . . tip any member of the prospective jury off to something they shouldn't know. Do you need additional [time] to speak to your client before I call the panel in?

(Respondents' Exh. H at 23, doc. 14-1 at 23)  Petitioner's counsel responded that he wanted a few minutes with his client, which the court allowed. (*Id.*) Thereafter, Petitioner did not object to any of the measures taken by the court to ensure the jurors would not learn that Petitioner and his co-defendants were in leg restraints. During trial, outside of the jury's presence, the court made the following comment:

> There's one more thing I'm going to make this as clear as I can to all defendants right now, and, make no mistake about this, I've been advised by two members of the court staff that [Petitioner] has attempted on more than one occasion to let the jury know as they're passing by right here that he is, in fact, in custody. Now, whether he's doing it or not, I haven't seen it, but I better not see it, and I better not see any more note passing between the defendants in this case.

(Respondents' Exh. Q at 4, 10; doc. 15 at 179, 185)

**b. Facts related to handcuffing incident**

During the seventh day of trial, when the jury was leaving for a break, Deputy Sheriff Armendariz - whose back was to the departing jurors, prematurely snapped a hand-cuff on Petitioner's wrist. (Respondents' Exh. P at 56-64; doc. 15 at 57-65)  Eight or nine of the jurors were still in the courtroom. (*Id*. at 63-64, *Id*. at 64-65)  Petitioner moved for a mistrial. (*Id*. at 62, *Id*. at 63)  Before ruling on Petitioner's motion, the trial court inter-viewed the jurors, one at a time, to determine what they had seen or heard. (*Id*. at 67-96, *Id*. at 68-97)  The court generally inquired whether, when exiting the courtroom, the jurors seen or heard anything out of the ordinary, or whether any other jurors had mentioned seeing or hearing anything. If a juror responded affirmatively, the court followed up. The court concluded that no juror saw the handcuffing; the only juror who heard anything was Juror Number 3 who heard a "clicking sound," guessed it was handcuffs, and had mentioned what he heard when he entered the jury room. (Respondents' Exh. P at 70-72, Doc. 15 at 71-73)

1   The court also found that Jurors Number 4, 5, 7, 8, 13, and 14 had either heard Juror

2   Number 3's comment, or other jurors' subsequent reference to handcuffs. (Respondents'

3   Exh. P at 75-78, 80-84, 89-91, 93-95) Juror Number 13 provided a detailed description of

4   the jurors' discussion, and testified that a male juror had indicated that he thought he heard

5   "cufflinks" being snapped on one of the defendants. (Respondents' Exh. P at 90, doc. 15 at

6   91)  The trial court brought those jurors who had made or heard the comments about hand-

7   cuffs back to the courtroom one at a time and inquired whether anything they had seen or

8   heard would impair their ability to sit fairly and impartially. The court also reviewed the

9   State's burden of proof and the presumption of innocence, and all the jurors affirmed that

10  they were willing to following those principles, could decide the case based on the evidence,

11  and were not prejudiced in any way. (Respondents' Exh. P at 98-108, doc. 15 at 99-109)

12          Thereafter, the trial court denied Petitioner's motion for a mistrial, stating that any

13  prejudice was "attenuated somewhat, more than it would be in a normal case, because of the

14  nature of the case . . . by the fact that these crimes, if they occurred at all, occurred while the

15  defendants were in custody." (*Id*. at 116-17, *Id*. at 117-18)

16  **2. Analysis**

17  **a. Leg Restraints**

18          As stated above, Petitioner argues that his constitutional rights were violated by

19          the

20  trial court's security measures, which required that Petitioner and his three co-defendants

21  remain in leg and ankle chains ("leg restraints"), and, because on one occasion, a juror heard

22  a deputy snap handcuffs on Petitioner. On direct appeal, Petitioner argued that his rights had

23  been violated by the trial court's failure to make a particularized inquiry into whether it was

24  necessary for Petitioner to wear leg restraints, and by the court's denial of his motion for a

25  mistrial after the handcuffing incident. The Court of Appeals rejected Petitioner's claims.

26  (Respondents' Exh. II, doc. 15-2 at 167)  Petitioner has not shown that the State courts'

27  rulings were contrary to, or an unreasonable application of, Supreme Court precedent. 28

28  U.S.C. § 2254(d).

The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. *Drope v. Missouri*, 420 U.S. 162 (1975). The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice. The Supreme Court has stated:

> The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.

*Coffin v. United States*, 156 U.S. 432, 453 (1895).

"To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Estelle v. Williams*, 425 U.S. 501, 504-05 (1976) (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

Petitioner "is correct that a defendant has the right to be free of shackles and handcuffs in the presence of the jury, unless shackling is justified by an essential state interest." *Ghent v. Woodford*, 279 F.3d 1121, 1132 (9th Cir. 2002) (citing, *inter alia*, *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986)). "In order for a defendant to prevail on a claim of this nature, a court must find that the defendant was indeed physically restrained in the presence of the jury, that the shackling was seen by the jury, and that the physical restraint was not justified by state interests. Then, in order for the unjustified shackling to rise to the level of a constitutional error, the defendant must make a showing that he suffered prejudice as a result." *Id.* Petitioner's argument that he is excused from establishing prejudice because the trial court did not "make a record" regarding why Petitioner and his co-defendants were restrained is not supported by the relevant law.

In support of his Fifth Amendment claim, Petitioner cites *Deck v. Missouri*, 544 U.S. 622 (2005). In *Deck,* the Supreme Court held that court-ordered shackling - which was visible - during the penalty phase of a capital trial, without a case-specific finding that security needs justified the shackling, violated a defendant's due process rights. *Id.* The Court stated that, the Constitution does not permit a state to use "*visible shackles* routinely in

1   the guilt phase of a criminal trial," and that, "where a court without adequate justification,

2   orders the defendant to wear shackles that will be *seen by a jury*, the defendant need not

3   demonstrate actual prejudice to make out a due process violation. The State must prove

4   'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the

5   verdict obtained.'" *Deck*, 544 U.S. at 633-35 (quoting *Chapman v. California*, 386 U.S. 12,

6   24 (1966)) (emphasis added).

7           The holding in *Deck* does not apply here because the leg restraints were not visible

8   to the jury. Moreover, even if Petitioner established a violation of his due process rights

9   under *Deck*, because this is a § 2254 proceeding, Petitioner must show that the constitutional

10  error resulted in "actual prejudice," *i.e,* it had a "substantial and injurious effect or influence

11  in determining the jury's verdict." *Brecht*, 507 U.S. at 623; *Larson v. Palmateer*, 515 F.3d

12  1057, 1064 (9th Cir. 2008) (finding that petitioner failed to show that "wearing the leg brace

13  for the first two days of a six-day trial had a substantial and injurious effect or influence in

14  determining the jury's verdict.") (internal citations omitted).  Petitioner has not met the

15  *Brecht* standard. Here, there is no evidence that the jury was aware that Petitioner was

16  wearing leg restraints.  Additionally, the evidence against Petitioner at trial was substantial,

17  including eyewitness testimony that Petitioner had assaulted Officer Schwartz and Captain

18  Yielding, and eyewitness and videotaped evidence that captured Petitioner's participation in

19  the burglary of the prison store. (Respondents' Exh. N at 7-12, 25, 37, 42, doc. 14-4 at 8-13,

20  26, 38, 43; Exh. P at 134-35,  doc. 15 at 136-37; Exh. J at 101-02, doc. 14-2 at 240-42; Exh.

21  M at 61-64, doc. 14-3 at 218-19; Exh. L at 48-49, doc. 14-3 at 107-08; Exh. J at 44-46, doc.

22  14-2 at 183-85); *also see Lakin v. Stine*, 431 F.3d 959, 965-66 (6th Cir. 2005) (stating that

23  even though defendant, who represented himself, was "forced to make his case in front of

24  the jury while shuffling about the courtroom due to leg irons restricting his movement,"

25  error in failing to document the reasons for the restraints was harmless because "the

26  evidence of guilt [wa]s overwhelming."); *Cox v. Ayers*, 613 F.3d at 883, 891 (9th Cir. 2010)

27  (stating that "we have held that the unconstitutional shackling of a defendant results in

28  prejudice only if the evidence of guilt is not overwhelming.") (internal citations omitted).

1    In view of the foregoing, Petitioner is not entitled to habeas corpus relief based on his claim

2    regarding the use of non-visible leg restraints during trial.

3        **b.  Denial of Mistrial**

4        Petitioner further contends that his constitutional right to a fair trial was violated

5    by the handcuffing incident described above. The Court of Appeals rejected this claim.

6    Petitioner has not shown that the State court's determination was contrary to, or involved an

7    unreasonable application of, federal law.

8        The record reflects that Petitioner was not handcuffed during trial. Rather, the

9    isolated handcuffing incident occurred when the court was no longer in session and the jury

10   was leaving the courtroom. Although one juror reported hearing what he assumed was a

11   handcuff snapping shut, and shared that information with several other jurors, the jurors

12   avowed that they did not see the handcuffs or know which, if any, defendant had been

13   handcuffed. Moreover, the fact that Petitioner was, or had been, in custody was information

14   already known to the jury because the charges stemmed from a prison riot. *See Fountain v.*

15   *United States*, 211 F.3d 429, 434-36 (7th Cir. 2000) (stating that "even if we were to assume

16   that petitioner was shackled during trial and the jury could and did observe his shackles,

17   such a viewing would not have caused any prejudice . . . because it would have revealed

18   facts the jury in all probability ascertained from the trial . . . .").

19       This case is distinguishable from *Spain v. Rushen*, 883 F.2d 712, 722 (9th Cir.

20   1988), which Petitioner cites in support of his claim. During trial, the defendant in *Spain*

21       was subjected to maximum restraints: he wore leg irons, a waist chain to which
         each hand was bound by individual chains about eight inches long, and chains
22       that apparently held him to his chair. Moreover, the shackles were conspicuous;
         the jury was able to appreciate the full extent of the chaining. Given the number
23       of defendants on trial in shackles, the extent of restraints, and the long duration
         of the trial, the trial judge was powerless to conceal the chains. In sum,
24       shackling Spain in this manner exposed him to a serious threat of prejudice.

25   *Id*. at 722. This case is also distinguishable from *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th

26   Cir. 1999), where the defendant was "shackled during the entire course of his trial . . . and

27   the shackles were visible to the jury," and *Dyas v. Poole*, 317 F.3d 934, 937 (9th Cir. 2003),

28   where "at least one juror saw the defendant's shackles during trial from the jury box" and "it

1   is likely that other jurors saw the shackles."  As the Ninth Circuit noted in *Dyas*, shackling

2   "during trial" conveys a "more continuous and stronger message to the jury that the defen-

3   dant is dangerous" than does shackling to and from the courthouse. 317 F.3d at 937. The

4   same distinction is relevant here, where the handcuffing incident was isolated and occurred

5   when the jury was leaving the courtroom after court was out of session.

6       Petitioner also ignores the role of the presumption of innocence. The Supreme

7   Court has stated:

8       The principle that there is a presumption of innocence in favor of the accused is
        the undoubted law, axiomatic and elementary, and its enforcement lies at the
9       foundation of the administration of our criminal law.

10  *Coffin*, 156 U.S. at 453.

11      "To implement the presumption, courts must be alert to factors that may under-

12  mine the fairness of the fact-finding process. In the administration of criminal justice, courts

13  must carefully guard against dilution of the principle that guilt is to be established by

14  probative evidence and beyond a reasonable doubt." *Estelle*, 425 U.S. at 504-05 (citing *In re*

15  *Winship*, 397 U.S. at 364). Here, the trial court conducted a thorough examination of the

16  jurors to determine what each juror had seen and/or heard.  With regards to jurors who made

17  or heard the comments about handcuffs, the court questioned each juror individually to

18  determine whether anything they had seen or heard would impair their ability to sit fairly

19  and impartially. The court also reviewed the State's burden of proof and the presumption of

20  innocence, and all the jurors affirmed that they were willing to follow those principles, could

21  decide the case based on the evidence, and were not prejudiced in any way. (Respondents'

22  Exh. P at 98-108, doc. 15 at 99-109)  The trial court's decision to accept the jurors' avowals

23  that they could remain fair and impartial and properly apply the presumption of innocence

24  was within the trial court's discretion. The jury is presumed to have followed the court's

25  instructions. *Rhoades v. Henry*, 598 F.3d 495, 510 (9th Cir. 2010); *Weeks v. Angelone*, 528

26  U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.") (citing *Richardson v.*

27  *Marsh*, 481 U.S. 200, 211 (1987)).

28      Even if Petitioner established a violation of his due process rights based on the

1   handcuffing incident, he must show that the constitutional error resulted in "actual

2   prejudice," *i.e,* it had a "substantial and injurious effect or influence in determining the

3   jury's verdict." *Brecht*, 507 U.S. at 623; *Larson*, 515 F.3d at 1064 (finding that petitioner

4   failed to show that "wearing the leg brace for the first two days of a six-day trial had a

5   substantial and injurious effect or influence in determining the jury's verdict.") (internal

6   citations omitted). Petitioner has not met the *Brecht* standard.  Here, there is no evidence that

7   the jury was even aware that Petitioner was wearing leg restraints. Additionally, the

8   evidence against Petitioner at trial was substantial, including eyewitness witness testimony

9   that Petitioner had assaulted Officer Schwartz and Captain Yielding, and eyewitness and

10  videotaped evidence that captured Petitioner's participation in the burglary of the prison

11  store. (Respondents' Exh. N at 7-12, 25, 37, 42, doc. 14-4 at 8-13, 26, 38, 43; Exh. P at 134-

12  35,  doc. 15 at 136-37; Exh. J at 101-02, doc. 14-2 at 240-42; Exh. M at 61-64, doc. 14-3 at

13  218-19; Exh. L at 48-49, doc. 14-3 at 107-08; Exh. J at 44-46, doc. 14-2 at 183-85)  In view

14  of the foregoing, Petitioner is not entitled to habeas corpus relief based on his claim based

15  on the handcuffing incident.

16  **V. Conclusion**

17          For the reasons set forth above, the Amended Petition for Writ of Habeas Corpus

18  should be denied because Petitioner's claims either lack merit or are procedurally barred.

19          Accordingly,

20          **IT IS RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas

21  Corpus, doc. 4, be **DENIED**.

22          **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and

23  leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the

24  Petition is justified by a plain procedural bar and jurists of reason would not find the

25  procedural ruling debatable and because Petitioner has not made a substantial showing of the

26  denial of a constitutional right.

27          This recommendation is not an order that is immediately appealable to the Ninth

28  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have (14) fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6, Federal Rules of Civil Procedure. Thereafter, the parties have (14) fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 18th day of June, 2012.

Lawrence O. Anderson
United States Magistrate Judge